UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONTE MARQUIS NEAL,

                              Petitioner,                  Civil Action No. 2:13-CV-11699
                                                            Honorable Lawrence P. Zatkoff

v.

LLOYD RAPELJE,

                              Respondent.

_____/

**OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL
IN FORMA PAUPERIS**

        This matter is before the Court on Petitioner's request for habeas relief pursuant to 28 U.S.C.

§ 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree

premeditated murder MICH. COMP. LAWS § 750.316(1)(a), felonious assault, MICH. COMP. LAWS §

750.82, felon in possession of a firearm, MICH. COMP. LAWS § 750.82, and possession of a firearm

during the commission of a felony. MICH. COMP. LAWS § 750.227b. Petitioner is currently serving

life without parole for the murder conviction, 29-to-48 months for the assault conviction, 29-to-60

months for the felon in possession conviction, and a consecutive 2 year sentence for the

felony-firearm conviction. The petition raises numerous claims reorganized by the Court as follows:

(1) prosecutorial misconduct, (2) ineffective assistance of counsel, (3) erroneous jury instructions,

and (4) cumulative error. The Court will deny the petitioner because the claims are without merit.

The Court will also deny Petitioner a certificate of appealability and permission to appeal in forma

pauperis.

I. Background

        This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise from the fatal shooting of Fred Mumford. Mumford's roommate, Arthur Stakley, had previously allowed three men to enter Mumford's house under the pretense that they were there to meet Mumford. When Mumford returned shortly thereafter, he was shot while entering the house. He received eight gunshot wounds, causing his death. The principal issue at trial was Stakley's identification of defendants Hawthorne and Neal as the two shooters.

*People v. Neal*, No. 281666 (Mich. Ct. App. Feb. 24, 2009).

Following his conviction and sentence, Petitioner filed an appeal of right, raising the following claims:

> I. Neal was denied his right to a fair trial by prosecutorial misconduct where the prosecutor:
>
> > a. improperly made a burden shifting argument;
>
> > b. Neal's counsel was ineffective for failing to object.
>
> II. The trial court improperly charged the jury with the cognate lesser offense of felonious assault as a lesser offense of the charge of assault with intent to do great bodily harm; defense counsel was ineffective for requesting the instruction because felonious assault was not argued by the State and no defense was put to that charge.
>
> III. Convictions and sentences for both first-degree premeditated murder and first-degree felony murder, arising from the death of a single individual, violate double jeopardy.

Petitioner also filed a pro-se supplemental brief, raising the following claims:

> I. Neal was denied his right to a fair trial by prosecutorial misconduct where the prosecutor:
>
> > a. vouched for a witness's credibility;
>
> > b. appealed to the jury's sympathy;
>
> > c. interjected broader issues than guilt or innocence;

2

        d. appealed to the jury's civic duty; and

        e. the cumulative effect of this misconduct could not have been cured by a jury instruction.

II. Neal was denied the effective assistance of trial counsel for:

        a. failing to object to prosecutorial misconduct; and

        b. failing to challenge the improper photo identification.

III. Neal was deprived his constitutional rights by the cumulative effect of constitutional errors.

The Michigan Court of Appeals affirmed Petitioner's convictions. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, but his application was denied by standard order. *People v. Neal*, No. 138562 (Mich. Sept. 16, 2009) (table).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

I. The trial court improperly omitted several jury instructions. Defense counsel was ineffective for failing to object.

II. The trial court improperly instructed the jury, taking away several elements of the offense, overemphasizing the prosecutor's theory, and invaded the province of the jury. These errors were structural as they removed elements of the charge and limited the jury's consideration to a question of identification.

III. Neal was deprived of his right to the effective assistance of counsel by his counsel's:

        a. failure to investigate and interview several exculpatory witnesses;

        b. failure to consult an expert to analyze the recovered shell casings;

        c. failure to obtain an expert in identification; and

        d. failing to strike a biased juror.

IV. Neal was deprived of his right to select appellate counsel of his choice.

V. Neal was deprived of the effective assistance of appellate counsel by his appellate counsel's failure to raise on direct appeal significant and strong issues.

VI. Neal was deprived of the effective assistance of trial counsel by his counsel's failure to investigate and failure to interview a critical exculpatory witness during the pre-trial investigation stage.

The trial court denied the motion for relief from judgment, finding in part that Petitioner's claims were barred from review under Michigan Court Rule 6.508(D)(3). Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). *People v. Neal*, No. 307799 (Mich. Ct. App. June 8, 2012). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Neal*, No. 145419 (Mich. Sup. Ct. Nov. 20, 2012).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

## III. Discussion

A. Prosecutorial Misconduct

Petitioner first raises a host of claims regarding the prosecutor's conduct at his trial. Specifically, Petitioner asserts that the prosecutor: (1) shifted the burden of proof onto Petitioner during closing argument, (2) vouched for the credibility of his witnesses, (3) appealed to the jury's sympathy, (4) argued about matters unrelated to Petitioner's guilt or innocence, and (5) appealed to the jury's civic duty. The Court finds that none of the allegations have merit.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must

6

demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, ___ U.S. ___, 132 S.Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

1. Shifting Burden of Proof

Petitioner asserts that the prosecutor made an impermissible burden-shifting argument during its rebuttal. In response to defense counsel's argument challenging Stakley's identification testimony and the integrity of the police investigation, the prosecutor characterized the argument as containing "half-truths" and being a "red herring."

A burden shifting argument occurs where a prosecutor makes an indirect comment on a defendant's failure to testify or produce evidence, such as a statement that the prosecutor's evidence is uncontradicted. See e.g., *Lockett v. Ohio*, 438 U.S. 586, 594-95 (1978). "A prosecutor may comment on . . . evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify." *Skinner v. McLemore*, 551 F. Supp. 2d 627, 646 (E.D. Mich. 2007) (citing *United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993); *United States v. Sensi*, 879 F.2d 888, 900, 279 U.S. App. D.C. 42 (D.C. Cir.1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988)).

Here, nothing about the prosecutor's argument was burden shifting or constituted a comment on Petitioner's failure to testify or present evidence. Rather, the prosecutor properly challenged the defense theory that Stakley's identification was unreliable and that the police investigation was

7

lacking. The allegation is without merit.


   2. Vouching

   Petitioner next asserts that the prosecutor vouched for Stakley's credibility and the credibility

of the police officers.  A prosecutor may not express a personal opinion concerning the guilt of a

defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching

for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly

inviting the jurors to convict the defendant on a basis other than a neutral independent assessment

of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations

omitted).

   The test for improper vouching for a witness is whether the jury could reasonably believe

that the prosecutor was indicating a personal belief in the witness' credibility. *United States v.

Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt

comments, or comments that imply that the prosecutor has special knowledge of facts not in front

of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States

v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however,

that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins*, 209

F.3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth

Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal

belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See

United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002).

   Here, the prosecutor responded to the defense attorney's argument that the police

8

investigation was "very poor," and Stakley's identification was unreliable. The responsive argument did not suggest that the prosecutor had any hidden or special knowledge that the witnesses were credible. This allegation is without merit.

3. Appeal to Jury's Sympathy and Civic Duty

Petitioner asserts that the prosecutor's argument asked the jury to convict Petitioner as a matter of its civic duty and out of sympathy for the victim.

The Court has reviewed the record and can find no statement by the prosecutor appealing for a conviction out of sympathy for the victim. In any event, even explicit appeals for sympathy have been found to not warrant habeas relief. See *United States ex. rel. Rockman v. DeRobertis,* 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), rev'd on other grounds, 919 F.2d 1091 (6th Cir. 1999) (en banc). Finally, any potential prejudice was cured by the trial court's instruction to the jury that it must decide the case solely on the evidence. *Baylor v. Renico*, No. 05-CV-71624, 2009 U.S. Dist. LEXIS 31200, 2009 WL 982212, at *7 (E.D. Mich. Apr. 13, 2009); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999) (Cleland, J.).

With respect to civic duty argument, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *Byrd v. Collins*, 209 F. 3d at 539 (quoting *United States*

*v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

Here, the prosecutor merely reminded the jury that it had taken an oath to return a true and just verdict and that the only just verdict was a verdict of guilt.  This "less than-pointed-remark" did not rise to the level of a remark designed to incite prejudice in a jury, thus defeating Petitioner's "civic duty" claim. See *Puertas v. Overton*, 168 Fed. Appx. 689, 701 (6th Cir. 2006). Moreover, because the challenged argument was isolated, Petitioner is not entitled to habeas relief. *See Martin v. Foltz*, 773 F. 2d 711, 716-17 (6th Cir. 1985).

### 4. Arguing Matters Unrelated to Guilt or Innocence

Finally, Petitioner challenges the prosecutor's argument that the defendants had pretended to be on the phone with the victim when they knocked on his door as a ploy to get Stakley to open the door, and that the fact that none of defendants spoke to each other when the victim arrived as an indication that they had planned the shooting before hand.

Contrary to Petitioner's allegations, this argument was proper. It was relevant to the issue of premeditation, an element of first-degree murder. The fact that the defendants appeared to have come up with a plan to gain entry to the house, and then had no need to communicate before opening fire, tended to show that the murder had been planned out beforehand. This allegation is also without merit.

### B. Ineffective Assistance of Counsel

Next, Petitioner makes several allegations regarding his trial counsel's performance. The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the

10

fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, a petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland* to claims adjudicated on the merits by the state courts. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S. Ct. at 788.

### 1. Failing to Object to Conduct of Prosecutor

Petitioner first asserts that his counsel was ineffective for failing to object to the conduct of the prosecutor. To show prejudice under *Strickland* for failing to objection to prosecutorial misconduct, a habeas petitioner must demonstrate that, but for the alleged error of his trial counsel in failing to objection to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Because the Court determined that the prosecutor's conduct did not amount to misconduct, Petitioner is unable to establish that he was prejudiced by counsel's failure to object. *See Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006).

11

2. Request for Lesser Offense Instruction

Petitioner next asserts that his counsel was ineffective for requesting an instruction on felonious assault to give the jury the option of finding Petitioner guilty of something less than assault with intent to commit murder. The argument is frivolous. First, as a result of this successful strategy, Petitioner was convicted of the lesser offense. Second, even if there were error, it would not alter the fact that Petitioner must serve a mandatory life sentence. His lesser concurrent sentence for felonious assault will not affect the length of his incarceration. *See Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989) (a federal court may decline to review claims which challenge criminal convictions that have resulted in sentences which are wholly subsumed by those conferred by greater sentences). Finally, the request was a reasonable strategy. It is reasonable for counsel to decline to pursue an all-or-nothing strategy and to provide a basis for the jury to find the prosecution witnesses credible but not convict him of the greater offense. *See Singleton v. Lockhart*, 871 F.2d 1395, 1400 (8th Cir. 1989); *Ruggles v. Michigan Dep't of Corrections*, No. 2:08-CV-14706, 2011 U.S. Dist. LEXIS 51182, 2011 WL 1812206, at *5 (E.D. Mich. May 12, 2011). Petitioner is not entitled to relief with respect to this allegation.


3. Failing to Challenge Identification Testimony

Petitioner next asserts that his counsel was ineffective for failing to move to suppress Stakley's identification testimony and for failing to retain an expert witness regarding the reliability of identification testimony.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry*

*v. New Hampshire*,   U.S.   , 132 S.Ct. 716, 718, 181 L. Ed. 2d 694 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (holding that due process challenges to identification procedures are reviewed using the *Biggers* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence of suggestive pretrial identification procedures. *Brathwaite*, 432 U.S. at 112-113. Instead, determining whether suppression is required is a case-by-case exercise. *Id*. at 116; *see also Biggers*, 409 U.S. at 201.

First, the claim is not well-founded. Counsel for defendants did request a hearing on this issue, but the court denied it. *See* Tr. 6-12-2007. Moreover, Petitioner does not assert that Stakely's identification was the result of any unduly suggestive pretrial identification procedure. Rather, he asserts that because Stakely did not know him, there must have been some impropriety in the photographic lineup. Petitioner has attached a copies of the photographic lineups as exhibits. *See* ECF No. 11-10 through 11-13. Nothing about the spread of pictures appears to be unduly suggestive. Therefore, there is no basis to conclude that had a hearing been held, counsel would have been successful in suppressing the testimony. Finally, defense counsel fully cross-examined Stakely regarding his identification of Petitioner as one of the perpetrators. His challenge to the identification essentially goes to the weight of the evidence, not to its admissibility.

With respect to retaining an expert witness regarding identification, "[n]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth

13

Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined the witnesses about the problems with their identification. Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel elicited testimony to discredit the witnesses' identification testimony. *Greene v. Lafler*, 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006).

### 4. Failing to Interview Defense Witnesses

Petitioner asserts that his counsel was ineffective for failing to interview and investigate the desirability of calling two witnesses for the defense. One is his co-defendant, the second is a woman who saw a man before the shooting but could not identify him. He also asserts that counsel should have retained an expert to examine shell casings from the scene.

"A petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 U.S. Dist. LEXIS 11677, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also Pittman v. Florida*, No. 8:05-cv-1700, 2008 U.S. Dist. LEXIS 64484, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner has failed to provide an affidavit or other offer of proof that his co-defendant

14

would have been willing to testify in his defense at trial, nor does Petitioner indicate what his co-defendant's testimony would have been. With respect to the second witness, a police report indicates that she saw a man in the vicinity of the shooting, but she was unable to identify him. She did not indicate that Petitioner was not the man she saw. It is hardly surprising that an eyewitness saw a person at the scene of a crime but could not identify him, and there is little chance that presentation of her account would have altered the result of the trial. Lastly, because no firearm was recovered, there would be little benefit in presenting expert testimony regarding the shell casings found at the scene. The claim is without merit.

### 5. Failing to Strike Juror

Petitioner asserts that his counsel was ineffective for failing to move to strike a juror who indicated that he would prefer a defendant who testified on his own behalf. Petitioner indicates that the juror in question ultimately did not serve on the panel to hear his case, but that his answers during voir dire adversely effected the other jurors.

The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury. *Skilling v. United States*, 561 U.S. 358, 377 (2010). A habeas petitioner can only prevail on a claim if he demonstrates that the jurors were actually biased against him. *Johnson v. Luoma*, 425 F.3d 318, 328 (6th Cir. 2005). If a biased juror was impaneled, "prejudice under *Strickland* is presumed, and a new trial is required." *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001).

Petitioner has not shown that any juror who participated in deciding his case was actually prejudiced by the comment of the prospective juror. The United States Supreme Court has ruled that where a juror who should have been excused for cause was removed by defendant's peremptory

15

challenge, any claim that the jury was not impartial was required to focus, not on the excused juror, but on the jurors who ultimately sat. *Ross v. Oklahoma*, 487 U.S. 81, 85-91 (1988).

In *Ross,* the Supreme Court ruled that a defendant's right to an impartial jury was not violated when he used a peremptory challenge to excuse a juror who should have been excused for cause, even though the failure to remove that juror for cause may have resulted in a jury panel different from that which would have otherwise decided the case. *Id*. A showing of prejudice requires that the challenged juror was empaneled. In the present case, Petitioner has not shown that any juror who actually sat on his jury was prejudiced. Therefore, any error which may have occurred for failing to remove the jurors for cause did not result in prejudice warranting a grant of habeas relief.

### 6. Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective for failing to raise several of his issues during his appeal of right. This claim is aimed at establishing cause to excuse any procedural default of his claims. This Court has determined that Petitioner's claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because Petitioner's are without merit, appellate counsel was not ineffective in his handling of Petitioner's direct appeal.

### C. Jury Instructions

Petitioner next raises claims regarding the jury instructions used at his trial. Typically, a

claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id*.

### 1. Instruction on Cognate Offense of Felonious Assault

Petitioner first asserts that the trial court erroneously instructed the jury on the offense of felonious assault. In *People v. Cornell*, 466 Mich. 335 (2002), the Michigan Supreme Court held that the statute governing lesser offenses, MICH. COMP. LAWS § 768.32(1), does not permit a court to instruct the jury on an uncharged cognate offense. *See Cornell*, 466 Mich. at 359 140. Because felonious assault is a cognate offense to the offense of assault with intent to commit either murder or great bodily harm, the instruction is normally not appropriate under state law. See *People v. Otterbridge*, 477 Mich. 875, 875 (2006). Nevertheless, a defense attorney has discretion to waive "a broad array of constitutional and statutory provisions." *People v. Carter*, 462 Mich. 206, 217-18 (2000) (citation and internal quotations omitted).  As explained above, counsel's decision to waive the error (or rather, to affirmatively invite the error) was reasonable because requesting the felonious assault instruction gave the jury  a means by which to find defendant guilty of a less serious offense.

An error in instructing on a cognate offense is subject to deliberate waiver. *See New York*

17

*v. Hill*, 528 U.S. 110, 114 (2000); *People v. Nyx*, 479 Mich. 112, 128 (2007) (plurality op. of Taylor

, C.J.) (noting that where defense counsel requests cognate offense instruction, any claim of error

is barred by the invited-error doctrine). Thus, Petitioner's complaint about the felonious assault

instruction is meritless.


2. Instruction on Elements

Petitioner next asserts that the trial court erred in instructing the jury on the elements of

murder by focusing the jury's attention on what it thought was the pivotal issue in the case.

Specifically, the trial court informed the jury that it thought that the primary issue in the case was

identification and made comments that assumed a homicide occurred.

These sort of comments while instructing the jury were proper. Under clearly established

Supreme Court law, a trial judge may comment on the evidence:

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the
> governor of the trial for the purpose of assuring its proper conduct and of
> determining questions of law. . . . In charging the jury, the trial judge is not limited
> to instructions of an abstract sort. It is within his province, whenever he thinks it
> necessary, to assist the jury in arriving at a just conclusion by explaining and
> commenting on the evidence, by drawing their attention to the parts of it which he
> thinks important, and he may express his opinion upon the facts, provided he makes
> it clear to the jury that all matters of fact are submitted to their determination. . . .
> This privilege of the judge to comment on the facts has its inherent limitations. His
> discretion is not arbitrary and uncontrolled, but judicial, to be exercised in
> conformity with the standards governing the judicial office. In commenting upon
> testimony he may not assume the role of a witness. He may analyze and dissect the
> evidence, but he may not either distort it or add to it. His privilege of comment in
> order to give appropriate assistance to the jury is too important to be left without
> safeguards against abuses.

*Quercia v. United States*, 289 U.S. 466, 469-470 (1933).  Consistent with *Quercia*, the trial court's

comment regarding what it felt was the primary issue in the case gave appropriate assistance to the

jury in deciding the case. Furthermore, given the nature of the victim's wounds, there was no

question that a homicide occurred. See *Neder v. United States*, 527 U.S. 1, 9-11 (1999). No error

occurred.

## D. Cumulative Error

Petitioner's final claim alleges that the combination of trial errors deprived him of due

process and a fair trial. The claim is not deserving of habeas relief, because "[t]he Supreme Court

has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine*

*v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Thus, it cannot be said that the state court orders in this

case were contrary to any Supreme Court decision so as to warrant habeas relief under AEDPA.

Petitioner's cumulative-error claim, therefore, is not cognizable on habeas corpus review. *Sheppard*

*v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.

2005).

## IV. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability

must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing

threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's

assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473,

484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

19

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

### V. Conclusion

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that permission to appeal in forma paperis is DENIED.

S/Lawrence P. Zatkoff
United States District Judge

Dated: December 3, 2014

20